We can call the case. 324-0567, the people of the state of Illinois, appellant by Laura Bailon v. Treveon v. Terrell, appellee by Andrew Boyd v. Bailon, appellee by Andrew Boyd, appellee by Andrew Boyd, appellee  by Andrew Boyd, Storie, Socialevance of Illinois, appellee by Andrew Boyd, Life Center of Illinois, the restaurant being where the victim's car and the suspect vehicle first encountered each other, and the ride dispensary footage capturing the chase of the victim's vehicle by the suspect vehicle. Can I ask about these photos? I mean, it seems to me that it might be fair to say that the complaint oversold the... the two vehicles are consistent. There's no question about that. But as you look at the photos for argument today, would you be comfortable saying they're definitely the same car? From me as a layperson looking at the photos? Sure, you as a layperson. No. However, the officer knows how to identify the unique features of the vehicle. He knew that the fog light was only produced between 2016 and 2018, so that narrows down the model years. And he knows how to track down that it's a Malibu. Plus, there's also the dark tinted windows and dark rims that don't come standard on the cars. The rims have a specific pattern, and there's more than just the photos, too. There are surveillance videos. The officer stated in the complaint affidavit that he viewed the videos. Moreover, they obtained... they searched the footage for black Chevrolet sedan, as far as whether this could be the same car or many other cars out there. They searched for black Chevrolet sedan. They got hundreds of results for four days between Joliet, Cresthill, and Shorewood. However, with the dark tinted windows, specific rim pattern, model year, and dirt on the side of the vehicle, only one of those black Chevrolet sedans in the area matched the suspect vehicle. Two and a half hours before going in a different direction. Well, if this vehicle was such a common type of vehicle that it's going to be all over the place, there would have been more than one that matched. Instead, only one matched based on all those characteristics put together, which the officer knew how to attach the significance of them. I don't know that this is in the record, and if it's not, you can just tell me it's not and move on, but can you just describe what this flock system is? That is not in the record. All right, continue. All I know about the flock system is that there's cameras in Plainfield, there's cameras in Joliet, and there's cameras in Shorewood that were searched. It's whatever these cameras that happen to be in places that law enforcement are using captures. I know that they captured, I believe it was hundreds of vehicles when they searched black Chevrolet sedan, which is the general type of car, but I know that only this one vehicle registered to defendant was the only one that matched the criterion from the surveillance videos and surveillance footage. So if this had turned up dozens of cars that also matched that vehicle in the area, then yes, the officers couldn't be sufficiently – there wouldn't be a sufficient probability that the suspect vehicle was the vehicle depicted on the flock footage. But based upon all the facts that were connected in the investigation by the officers, the people submit that there was a sufficient probability that it was sufficiently likely that the car depicted on the flock footage was the suspect vehicle, and that car was registered to defendant and Tiffany Terrell. The victim stated that she saw two men in the vehicle, and defendant was the male registered owner. Case law allows that an officer may reasonably presume that the owner of a car is likely the driver. Of course, it's possible someone else could be the driver, but it's sufficiently likely for probable cause, which isn't beyond reasonable doubt, just a fair probability. It's sufficiently probable that as the male registered owner with two men being in the car, defendant was the likely driver. Plus, the victim had identified Barfield as being in the vehicle, and officers investigated the Facebook profiles for Barfield and Facebook profiles for defendant and discovered they were Facebook friends, and that a reliable, confidential informant informed an officer that Barfield had been known to travel in a black Chevrolet Malibu recently, and that is a type of car that defendant had generally. So, under the totality of the circumstances all put together, which is what the probable cause analysis requires, there is a sufficient probability that defendant was the driver of the suspect vehicle. So, Facebook friends. I'm not a fan of Facebook, so I can't speak for myself, but people I know have thousands of friends, most of whom they don't actually know. So, the name showing up as a Facebook friend, it doesn't necessarily seem particularly compelling? On its own, but it's part of the total analysis. So, once the defendant was the registered owner of the suspect vehicle and Barfield is in that vehicle as identified by the victim, that's just another piece of corroboration suggesting a totality of the circumstances probable cause that defendant was connected to this offense. And I believe people generally are Facebook friends. I know people that they... Different social media, I feel like, result in people having parasocial relationships with strangers. I feel like Facebook is one where it's more friends with each other, but that's... You've never run for office. But I've never run for office and neither has defendant or Barfield, as far as I'm aware. So, the people submit there's a sufficient probability that defendant was the driver of the suspect vehicle. Well, let me ask you this question. Let's say that you get all the information that was retrieved as a result of the search warrant on following the triangulation to identify if that phone was in that car or in the area. If it turns out he wasn't, if it turns out his phone doesn't ping in the area where the vehicle was, would you argue that if the owner of the car wasn't there, it's likely or even highly likely that he would have communicated with whoever he lent his car to, whoever had possession of his car, even if he wasn't the driver? Yes, even if he wasn't the driver, it's still possible that he's communicating with who's in the vehicle. Yes. Because somehow, Barfield gets in that vehicle and that vehicle is registered to defendant. So, there's location data and also the fact that phones are used to communicate with others. And that's the nexus to the cell phone records to the shooting. It's common knowledge people generally take their phones with them and even if they don't, that they're used to communicate, set up plans with other people. Additionally, about cell phones, Detective German did state in the Complaint and Affidavit for Search Warrant that he had 18 years of experience, including training in forensic cell phone investigations and in call detail records. He stated that obtaining a subject's cell phone records and call detail records can assist in determining the location of the mobile device, routes of travel, and communications to other vehicles. The people also argue that the warrant was not overly broad. Here, the search warrant searched for evidence of the offense of aggravated battery with a firearm in a limited time period. The cell phone records held by T-Mobile. It wasn't a phishing expedition for other offenses. It was a specific search for evidence of the January 15th shooting. And similar scopes of actual cell phones themselves, which aren't date limited, courts have viewed as... Search warrants that search for any evidence or all evidence on the phone have been viewed as permissible in scope. Even if this court does not agree that probable cause existed, the exclusionary rule should not apply here. The officers acted in good faith and objectively reasonable reliance on the search warrant issued by the neutral and detached magistrate. It contained a detailed investigation narrative connecting defendants to the shooting through his vehicle and his connection to Barfield. It was far from bare bones, and so the good faith exception should apply. Are there any further questions? I do. You will have an opportunity to rebuttal. Thank you. Thank you. Good morning, Your Honors. My name is Andy Boyd from the State Appellate Defendant's Office, and I represent Trayvion Terrell. If it please the court and counsel. At root, Your Honors, what this case is about is the fundamental right that Americans have to keep their private affairs private. The police simply cannot be given free reign to perform general exploratory rummaging through individual cell phones or cell phone records based on an increasingly dubious series of guesses or assumptions. Sometimes that is what police work is, though, right? It is. That's correct. At least that's where it begins. That's where it begins. The touchstone of the Fourth Amendment is reasonableness. And what we've got here, Your Honors, with respect to the state, is an increasingly unreasonable series of guesses or assumptions made by the police officer who drafted this affidavit that gets him, he believes, closer and closer to Trayvion. And what this officer does, then, is make a huge, unwarranted inferential leap that he says that he simply believes that information about this offense might be found on Trayvion's cell phone records. Would you agree with this statement? If it's probable that the two cars are the same, in other words, if the vehicle that Barfield is observed in is owned by Terrell, there's probable cause to look at Terrell's cell phone. Would you agree with that? Absolutely not. You would not agree? Absolutely not. Why not? The first thing I would say is that I agree with Your Honor's skepticism about whether or not these two vehicles were actually the same. If you look at these color photos that the state very nicely introduced into the record in the affidavit, what the affiant says is, well, there's a very distinctive salt pattern on the side of this car. And then you look at this color photo, and there's nothing distinctive about it. It's just the general mush of salt that you get when people drive around in the winter. But to answer Your Honor's question, no, even if these cars are the same, and I will assume that for the sake of argument, but this is not a concession. This is just an assumption for the sake of argument. No, because what we've got, then, is we start down the road of this officer who drafted this affidavit making an increasingly unwarranted series of guesses or assumptions. And the first one is that, well, there's a guess or there's an assumption that Trayvion Lissabonette was driving this vehicle. Yes, he was one of the registered owners of the car. One of them. Two people were registered owners of this car, Trayvion and Tiffany Terrell. And it might be a logical inference that generally the owner of the vehicle is the one who's driving it. But in this particular case, the individual who was driving the victim's car wasn't the owner of that car. Ms. Byron, in her summation, indicated that it was – I know that the victim identified Barfield as being in the car, and then she indicated that it was also indicated that another person in the car was a male. That wasn't my recollection, but do you agree with her as it relates to that? That's correct. Another male was identified in the car. So that was the case? Yes. So we have two males in the car, which wouldn't that suggest further that it might not be Mrs. Terrell? It certainly suggests that it's whoever Tiffany Terrell was. It suggests that it's not her, but it doesn't necessarily suggest that it was Trayvion, because, again, it's just a guess. It's just an assumption. And, again, to repeat, in this case, it's a bad assumption because the victim was not driving her car. The victim was driving her mom's car. So in this particular case, the case right in front of us right here right now, that assumption has been rebutted in the case of the victim. So you don't think that even if it turned out they got their search warrant, they get all their records off the phone, and it turns out his phone argument is he wasn't the driver, you believe that it is not at least probable that the owner of the vehicle knows who's in possession of this car? And it communicated with them on the phone, and that's how everyone communicates. Again, Your Honor, with respect, that's just another assumption. That's just another guess. So Your Honor's proposition is just another one of these assumptions or guesses that we pile on this whole list of assumptions or guesses that doesn't even get us anywhere near, and this is the main problem with this case from my point of view, is that none of this investigation, these numerous pages in this affidavit about this investigation, none of that stuff formed a concrete nexus to Trayvion's cell phone or his cell phone records. You've got this long investigation into the car. Counsel spent a pretty good chunk of her argument arguing about these cars, whether or not these cars were the same. Who cares? It doesn't matter. If the cars weren't the same, well, then certainly we should win this case. But it doesn't matter. Even if these cars were the same, we start piling assumption on top of assumption and guess on top of guess, and the problem is there's no concrete link to the cell phone records. And the law is crystal clear that there's got to be such a concrete link. There has to be a concrete factual link to the cell phone, and there's just not one here. And that is the essential for probable cause. And, look, the state's argument here, again, with respect to counsel, is absolutely breathtaking in its scope. Counsel, what about the good faith exception? Please. What about the good faith exception? I mean, you have to establish that the affidavit was so lacking in indicia of probable cause as to render our official belief in existence of probable cause entirely unreasonable. That's some of the cases there. Correct. And we have to give deference to the trial judge who signed the warrant, to his determination. So how do you address that? Deference doesn't mean rubber stamp. This honorable court, with all respect, has an obligation to look very carefully into whether the magistrate judge's decision was the correct one. But is it so lacking in indicia of probable cause? As I've explained in my brief, and I'm trying to explain here, this was a bare bones warrant that was based simply on the belief. And it even says that if you read the affidavit, and you read where this officer makes this inferential leap to the cell phone records, he uses that exact words. He just says, I believe that Trayvion's cell phone records are going to contain evidence of this crime. And that's after 10 or 11 pages detailing this investigation into whether these cars are the same, into how they got this guy's Facebook accounts, how they got this guy's phone number, how they got his license plate. And then he simply makes this jump, this huge inferential jump, and he says, I therefore believe that there's evidence related to this crime that's going to be found in Trayvion's cell phone records. Back to Justice Peterson's point. I mean, if it's the same car, then you have Barfield in Terrell's car. You have another man, at least, unknown in the car, but it's Terrell's car. And they are Facebook friends, whatever weight you want to give that. And you have this independent person saying that Barfield's been tooling around in Malibu lately. Why would it be unreasonable to suspect that there would be conversations, texts, things related to Barfield and why Barfield's in Terrell's car, if it is Terrell's car and Barfield's in it? Why would that be so unreasonable? With respect, Your Honor, you're making the same inferential leap. I am. I'm asking why the leap is unreasonable. Because it relies on this general idea, and we're just pulling this from outside the record. I don't even know where this comes from. But this general idea that the state says, well, everybody knows that everybody has cell phones. Everybody knows that everybody takes these cell phones everywhere. We do know, though, that Terrell has a cell phone and we know that Barfield has a cell phone. We know that the two records were requested. We know that because this warrant was executed. What were the two phone numbers that the warrant was seeking to be searched? You're right. Excuse me. We do know they had cell phones. We did know they had cell phones. But look, everybody doesn't take their cell phone everywhere. That's just not true. If what we're going to do here is go outside the record, then okay, let's do that. I don't take my cell phone everywhere. This case isn't about absolutes. It's about what's reasonable. Sure. Sure. And what the state's asking is absolutely unreasonable. The Fourth Amendment simply cannot be stretched as far as the state wants to stretch it. And with respect, if this Court greenlights what the state is asking, everybody's privacy is at risk. So I want to go back to Justice Anderson's question about the Lee-Anker faith exception. I don't think deference to the magistrate is relevant to the Lee-Anker faith question. But what is relevant is we do have an officer who maybe the officer got it wrong and maybe you're right. And the fact that it's probably the same car, that Barfield's in it, that they're Facebook friends, maybe altogether that's just not quite enough to issue the warrant. But is it so deficient that we think essentially this officer was trying to do a subterfuge on the court? I mean, we want officers to get search warrants, and that's the point of the Lee-Anker faith exception, right? Unless what they're doing is so obviously deficient, we're going to ultimately not employ the exclusionary rule if they went through the effort to get a warrant. How is that the correct ruling by the trial court? I prefer, Your Honor, to this Manzo case that I've cited in my brief. And there's a quote here that I think answers Your Honor's question. A bare-bones affidavit states only suspicions, beliefs, or conclusions without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge. A bare-bones affidavit is conclusory, one that asserts the opion's belief that probable cause existed. That's what this affidavit is here. It's conclusory. It simply states the officer's belief. There is a huge inferential leap that this officer took between the investigation into these automobiles, between the investigation into the Facebook accounts, and finally coming up with these phone numbers to, okay, I'm going to assume, I have a suspicion, I'm going to make a conclusion that there's evidence related to this offense found in Mr. Durell's cell phone records. And that's why this is bare-bones, to answer Your Honor's question. It goes right down the list of the factors that the Manzo Court used to determine whether or not an affidavit was bare-bones, suspicions, beliefs, conclusions, without providing underlying factual circumstances. That's what happened here. That's exactly what happened here, and that's why there's no good-faith basis for this warrant. That's precisely the problem. And if Your Honors aren't convinced that this was a bare-bones warrant, well, then it certainly was overbroad. It certainly was overbroad. Now, I will acknowledge my unfortunate error. So it said either nothing or it said way too much. You're saying it was either bare-bones or it was overbroad. That seems like you're saying it was either nothing or it was a lot. Well, if only one of those is needed to find that the good-faith basis wasn't satisfied. If it was bare-bones, the good-faith basis wasn't satisfied. If it was overbroad, the good-faith basis wasn't satisfied. In my personal opinion, it's both. But the overbreadth issue, does the whole warrant fail or just the overbroad nature of certain requests fail? The whole warrant fails because the whole warrant is based on this series of assumptions. But overbreadth has to do with what's being sought. Is that not so? Overbreadth has to do with what's being sought. That's absolutely correct. So, I mean, if some of what's being sought is permissible and some is overbroad, beyond the pale, outside the scope of what they should be asking, why should the whole warrant be quashed? First of all, because it's bare-bones. But I'm just focusing on overbreadth as an alternative basis to not employ the good-faith. Because this warrant authorized a search into virtually the entirety of these cell phone records. And the same assumptions are required. In order to get anywhere in this warrant, in order to get into these cell phone records at all, any sort of these cell phone records, location records, text records, whatever these records might be, in order to get anywhere, you have to make these same assumptions. You have to make these same unwarranted inferential leaps. You have to make these same guesses. You have to make these same conclusory statements. That's why the entire warrant fails. Not just part of it. The entire warrant. So thank you, your honors. We would ask that this court affirm the circuit court's judgment. And thank this court very much for its time and consideration in this case. Thank you, sir. We're good. Thank you, your honor. The people will address a few points from the defendant's argument. First, concerning the privacy concerns. The privacy is protected by the requirement that officers get a warrant. In this case, officers got a warrant. And the exclusionary rule is not meant as a remedy for an invasion of privacy. Instead, its purpose is to deter future Fourth Amendment violations. And here, where officers relied in good faith on the search warrant issued by the judge, that the good faith exception should apply. Concerning the salt on the vehicle, the warrant, the complaint and affidavit warrant stated that it was dirty with snow and salt on the passenger side of the vehicle, which is similar to the video surveillance of the offending vehicle. On its own, two dirty cars, no, not a match. But probable cause would be totality of the circumstances. If there had been a squeaky clean car two hours before, and then the suspect vehicle is super dirty, that's going to rule it out. But here, it's just consistent amongst the other features that match. I have a question about that. So in the affidavit, the officer, I'm going to summarize, basically says, I think the pattern of dirt and salt, because it was winter, looks the same. Like it's the same in the two best photographs that we have in the record. I can't see that. So here's my question. If what was attached and what's in the record, that we get to look on the corroboration issue, doesn't quite fit what the officer has said, are we allowed to still take the officer's word for it? What picture was he looking at? If we couldn't see it in the ones that were attached. Well, the officer also had the video surveillance footage, which would have showed the cars in motion. And he didn't say, this is an exact match. Someone wrote on the side, this is Garfield in the car with me, defendant. No, what he said is on page 13 of the complaint for search warrant, which he just said that the vehicle appeared to be dirty with snow and salt on the passenger side of the vehicle, on the clock safety images, which is similar to the video surveillance of the offending vehicle. So he didn't say it's an exact match. He didn't oversell it in the complaint and affidavit for search warrant. And the relevance there, as I suggested, was if this car is clean, or there's no dirt or much less dirt on the side of that vehicle, then it could be eliminated as a match. But instead, the officer stated that it was consistent with it. And again, that's just one of the totality of the circumstances. We have the 2016 to 2018 model year, and then the customization in the dark rims with the rim pattern and the dark tinted windows that most off-the-lot Chevrolet Malibus aren't going to have. Additionally, defendant has asserted that there's just assumptions and guesses. The people respond that it's instead a consideration of the totality of the circumstances with common knowledge and reasonable inferences. And the good faith exception boils down to whether officers could believe in good faith that these two vehicles were sufficiently linked. Well, that's why officers sought the warrant. They presented the information they had about each vehicle to the warrant issuing judge, and for the warrant issuing judge to determine whether there was probable cause, the warrant issuing judge said yes. Having obtained that search warrant, the officers could reasonably rely on it in good faith, so the good faith exception should apply. Well, the people have asked that this court reverse the trial judge's order granting defendant's motion to express. Thank you, your honors. Well, we thank both sides for a spirited argument. It is an interesting case. We'll take the matter under advisement and render a decision in due course. Court is adjourned until the next argument. Thank you.